UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                       Civil No. 09-548(DSD/JJK)

Buffets, Inc., a
Minnesota corporation,
OCB Restaurant Company
LLC, a Minnesota limited
liability company, Ryan's
Restaurant Group, Inc, a
South Carolina corporation,
HomeTown Buffet, Inc., a
Minnesota corporation, Tahoe
Joe's, Inc., a Minnesota
corporation, Fire Mountain
Restaurants, LLC, a Delaware
limited liability company,

            Plaintiffs,

v.                                                      **ORDER**

LGI Energy Solutions, Inc.,
an Illinois corporation, LGI
Data Solutions Company, LLC,
a Minnesota limited liability
company, Dean Leischow, and
M & I Marshall and Ilsley Bank, a
Wisconsin financial services corporation,

            Defendants.


     William F. Mohrman, Esq. and  Mohrman & Kaardal, 33 South
     Sixth Street, Suite 4100, Minneapolis, MN 55402, counsel
     for plaintiffs.

     Rolin  L.  Cargill,  Esq.  and  Skolnick  &  Shiff,  527
     Marquette  Avenue  South,  Suite  2100,  Minneapolis,  MN
     55402; Elizabeth A. Larsen, Esq. and Leonard, Street &
     Deinard, 150 South Fifth Street, Suite 2300, Minneapolis,
     MN 55402; Amy L. Schwartz, Esq. and Lapp, Libra, Thomson,
     Stoebner & Pusch, 120 South Sixth Street, Suite 2500,
     Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon plaintiffs' motions to remand.  Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiffs' motions.

**BACKGROUND**

This dispute arises out of a January 7, 2007, contract between Buffets, Inc., its related corporations (collectively, "plaintiffs"),[1] and defendant LGI Energy Solutions ("LGI"). plaintiffs own and operate 546 restaurants throughout the United States.  LGI was formerly engaged in the business of managing and paying the utility invoices of restaurants, including water, gas, electricity and sewage costs.

Pursuant to the contract, LGI agreed to receive plaintiffs' monthly invoices from their utility providers and to determine the gross amount due.  (Mohrman Decl. Ex. 3.)  Plaintiffs would then transfer that amount to a designated bank account.  (Id.) Thereafter, LGI would access plaintiffs' funds and timely pay the invoices.  (Id.)  The contract provided that "LGI shall have a

---

[1] Buffets owns either directly or through subsidiary corporations or limited liability companies the following entities: OCB Restaurant Company, LLC; Ryan's Restaurant Group, Inc.; HomeTown Buffet, Inc.; Tahoe Joe's, Inc. and Fire Mountain Restaurants, LLC.

fiduciary duty to act in the best interest of [plaintiffs] free of self-dealing" and "[a]t no time shall LGI have a legal or equitable interest in [plaintiffs'] funds." (Id. at ¶¶ 3(b), 5.)

On April 9, 2008, LGI received a three million dollar loan from M&I Marshall & Ilsley Bank ("M&I").[2] (Mohrman Decl. Ex. 6.) Through its President, Dean Leischow ("Leischow"), LGI unconditionally guaranteed prompt repayment of the loan and agreed to transfer the accounts of its utility payment customers to M&I. (Id.) In September 2008, LGI and M&I entered into a depository agreement whereby LGI agreed to "indemnify and hold harmless [M&I] against any and all claims, losses, liabilities, costs, damages or expenses, including attorney's fees, incurred by [M&I] resulting from any such payment, non-payment, transfer or other action." (Mohrman Decl. Ex. 13).  In November 2008, LGI moved plaintiffs' designated bank account to M&I ("M&I account").

On December 10, 2008, LGI sent plaintiffs a letter stating that LGI had ceased all business operations and that:

> [o]ur secured lender M&I Bank has noticed a default under our operating credit agreements. The bank has a priority lien in all of our assets, including cash and receivables. It appears that liquidation of the company's assets will leave a significant deficiency claim owed to the bank. Accordingly, there will be no assets available for distribution to unsecured creditors.

---

[2] Two months later, LGI and M&I increased the loan amount by $500,000. (Mohrman Decl. Ex. 6.)

(Mohrman Decl. Ex. 12.)[3]  Upon receipt of the letter, plaintiffs audited the M&I account. (Wall Aff. ¶ 33.)  The results indicated that LGI had not used approximately four million dollars of plaintiffs' funds to pay their outstanding invoices. (Id.)  As a result, utility services were suspended at some of plaintiffs' restaurants, resulting in temporary closures.  (Id. ¶ 32.) plaintiffs later paid the outstanding amounts directly to the utility providers. (Id. ¶ 33.)

On January 2, 2009, plaintiffs filed a thirteen-count complaint in state court against M&I, LGI, Leischow and LGI's related limited liability corporation, LGI Data Solutions ("LGI Data").[4]  Meanwhile, on February 6, 2009, other creditors commenced an involuntary Chapter 7 liquidation bankruptcy proceeding against the LGI entities in United States Bankruptcy Court and Plaintiff's state law claims against those entities were stayed pursuant to 11 U.S.C. § 362.  On March 6 and April 7, 2009, M&I and Leischow removed to this court.  The court now considers plaintiffs' motions to remand their claims against M&I and Leischow.

---

[3] On December 10, 2008, LGI owed M&I over one million dollars on the loan.

[4] The court refers to LGI and LGI Data collectively as the "LGI entities."

**DISCUSSION**

**I.   Standard of Review**

Federal courts are "courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A claim may be removed to federal court "only if it could have been brought in federal court originally." Peters v. Union Pac. R.R. Co., 80 F.3d 257, 260 (8th Cir. 1996).  The party invoking jurisdiction bears the burden of proving that the prerequisites to jurisdiction are satisfied. See In re Bus. Men's Assur. Co., 992 F.2d 181, 183 (8th Cir. 1993).  Jurisdiction is determined based upon "[t]he allegations of the complaint as set forth at the time the petition for removal was filed." Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969).  Because the removal statutes impede upon states' rights to resolve controversies in their own courts, such statutes must be strictly construed. See Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 (8th Cir. 2002).  Therefore, although a defendant has a statutory right to remove when jurisdiction is proper, the plaintiff remains the master of the claim, and any doubts about the propriety of removal are resolved in favor of remand. See Bus. Men's Assur., 992 F.2d at 183.

**II. "Related to" Jurisdiction**

M&I and Leischow argue that the court has "related to" jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1334(b). According to that section, the district courts have "jurisdiction of all civil proceedings ... arising in or related to cases under title 11." 28 U.S.C. § 1334(b). See also Celotex Corp. v. Edwards, 514 U.S. 300, 310 (1995) ("related to" jurisdiction exists over chapter 7 and 11 proceedings); In re Reeves, 65 F.3d 670, 675 (8th Cir. 1995) ("related to" jurisdiction exists over chapter 7 liquidations). "A claim is related to a bankruptcy case within the meaning of § 1334(b) if it could conceivably have any effect on the bankruptcy estate." Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., 417 F.3d 953, 958 (8th Cir. 2005) (internal quotations omitted). In other words, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." In re Dogpatch U.S.A., 810 F.2d 782, 786 (8th Cir. 1987) (citation omitted). The broad scope of "related to" jurisdiction reflects Congress's intent "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex, 514 U.S. at 308. Therefore, even a proceeding that "portends a mere contingent or tangential

effect on a debtor's estate" meets the "conceivable effect" test. In re Titan Energy, Inc., 837 F.2d 325, 330 (8th Cir. 1988).

M&I and Leischow[5] first argue that "related to" jurisdiction exists because M&I has filed and Leischow intends to file an indemnification claim against the LGI entities. Specifically, in its cross-claim, M&I maintains that the rights set forth in the depository agreement entitle it to indemnification by the LGI entities in the event that M&I is found liable to plaintiffs. Leischow plans to assert an indemnification claim against the LGI entities pursuant to corporate bylaws.

Both actual and potential indemnification claims support a court's exercise of "related to" jurisdiction under section 1334(b). See Kocher v. Dow Chem. Co., 132 F.3d 1225, 1231 (8th Cir. 1997) (indemnification claim provides arguable basis for "related to" jurisdiction) (citing In re Dow Corning Corp., 86 F.3d 482, 490 (6th Cir. 1996)); In re Farmland Indus., Inc. v. ADM, 296 B.R. 793, 806 (B.A.P. 8th Cir. 2003) (indemnity claim conceivably effects bankruptcy case). This is because indemnity claims against

---

[5] As an initial matter, plaintiffs argue that Leischow's April 7, 2009, notice of removal was untimely. Federal Rule of Bankruptcy Procedure 9027, however, provides that "if the claim or cause of action in a civil action is pending when a case under the [Bankruptcy] Code is commenced, a notice of removal may be filed ... 90 days after the order for relief in the case under the Code." Fed. R. Bankr. P. 9027(a)(2)(A). Orders for relief in the bankruptcy case against the LGI entities were entered on March 3, 2009. Therefore, the court determines that Leischow's notice of removal was timely filed within Rule 9027's ninety-day limit.

a debtor have a conceivable effect on the amount of money that creditors may ultimately recover in the bankruptcy action. See Reeves, 65 F.3d at 675 ("An action is related to the bankruptcy case if it affects the amount of property available for distribution or the allocation of property among creditors.") (internal quotations omitted). Therefore, M&I's cross-claim and Leischow's potential indemnification claim support federal jurisdiction in this case.

M&I next argues that "related to" jurisdiction exists because plaintiffs challenge the joint conduct of M&I and LGI. A court may exercise "related to" jurisdiction when a plaintiff alleges liability resulting from the joint conduct of debtor and non-debtor defendants. See Abramowitz v. Palmer, 999 F.2d 1274, 1279 n.3 (8th Cir. 1993) (citing In re Wood, 825 F.2d 90, 94 (5th Cir. 1987)). To succeed on their claims against M&I, plaintiffs must first prove that LGI breached a fiduciary duty it owed plaintiffs and second, that M&I had actual knowledge of the alleged breach. See Minn. Stat. § 520.09. Therefore, because plaintiffs' claims concern the joint activities of M&I and LGI, the court's exercise of "related to" jurisdiction is appropriate.

Similarly, Leischow argues that plaintiffs' claims are predicated on the theory that, as the sole owner of LGI, he acted as LGI's "alter ego." In other words, Leischow asserts that plaintiffs' claims against him are merely an attempt to pierce

LGI's corporate veil.  Although the Eighth Circuit has not addressed this issue, other courts have determined that actions by a creditor that attempt to pierce the corporate veil establish "related to" jurisdiction.  See Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1239 (3d Cir. 1994) ("[A]ctions by a creditor to pierce the corporate veil, or alter ego actions against the debtor corporation are often considered ... 'related to' proceedings.").  Therefore, in consideration of the above factors, as well as Congress's intent to bestow comprehensive jurisdiction on federal bankruptcy courts, the court determines that plaintiffs' claims against M&I and Leischow are "related to" the bankruptcy proceedings against the LGI entities.  Accordingly, the court has jurisdiction over plaintiffs' actions against M&I and Leischow under 28 U.S.C. § 1334(b).

**III. Abstention**

Anticipating this conclusion, plaintiffs argue in the alternative that the court must abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c)(2). According to that section:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can

9

>     be timely adjudicated, in a State forum of
>     appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Mandatory abstention is thus required where: (1) a timely motion is made; (2) the proceeding is based on a state law claim or cause of action; (3) the basis for removal is "related to" jurisdiction; (4) the only basis for original jurisdiction in federal court is the bankruptcy filing; (5) the proceeding has already commenced in state court; and (6) the action can be timely adjudicated in state court. See Titan Energy, 837 F.2d at 332 n.14; In re Mo. Props., Ltd., 211 B.R. 914, 920 (Bankr. W.D. Mo. 1996). Where the six factors supporting mandatory abstention are present, the court lacks jurisdiction and remand is required. See Frelin v. Oakwood Homes, Inc., 292 B.R. 369, 380 (Bankr. E.D. Ark. 2003). Plaintiffs have the burden of proving that abstention is required under 1334(c)(2). See Meredith v. Clayton Homes, Inc., No. 06-4117, 2007 WL 1140407, at *3 (W.D. Ark. Apr. 17, 2007).

    M&I and Leischow argue that plaintiffs cannot meet their burden of proof under § 1334(c)(2) because they did not set forth evidence establishing all six mandatory abstention factors in their initial memorandums. While plaintiffs submitted additional evidence in their reply memorandums, Local Rule 7.1(b)(2) "specifically contemplates that the factual basis for a dispositive motion will be established with affidavits and exhibits served and filed in conjunction with the initial motion and the responding

party's memorandum of law." D. Minn. L.R. 7.1(b)(2), 1999 Advisory Committee Note. New evidence submitted in reply memorandums or affidavits may only address those factual claims that could not "reasonably be anticipated." Id. Furthermore, "[i]t is improper to withhold information ... from initial moving papers ... in order to gain an advantage." Id.

Here, plaintiffs reasonably should have anticipated that all six of the mandatory abstention factors would be addressed. Those six factors are clearly set forth in 28 U.S.C. § 1334(c)(2) and supporting case law. See Titan Energy, 837 F.2d at 322, n.14. Therefore, the court does not consider the evidence submitted in plaintiffs' reply memorandums and determines that plaintiffs have not met their burden of proof. Accordingly, mandatory abstention is not required.[6]

**CONCLUSION**

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motions to remand [Doc. Nos. 6 & 17] are denied; and

---

[6] Furthermore, having determined that "related to" jurisdiction exists over Plaintiffs' claims, the court declines to exercise permissive abstention under 28 U.S.C. § 1334(c)(1).

11

2.   Plaintiffs' claims against M&I and Leischow are referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and Local Bankruptcy Rule 1070-1.

Dated:   September 8, 2009

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court